**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 21 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN W. PAUL,

        Petitioner - Appellant,

v.

SANDRA MCFADIN, Warden; TOM
UDALL, Attorney General, State of New
Mexico; DONALD DORSEY, Warden,

        Respondents - Appellees.

No. 96-2214

(D. New Mexico)

(D.C. No. CIV-95-34-HB)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **HENRY**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered
submitted without oral argument.

Petitioner John W. Paul filed two 28 U.S.C. § 2254 petitions for writs of habeas
corpus in the United States District Court for the District of New Mexico. In petition

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

CIV 95-0034, Paul alleged that the defendants violated his due process rights by failing to provide both preliminary and final parole revocation hearings within the time limits prescribed by New Mexico law. In petition CIV 95-0397, Paul alleged that the defendants violated his due process rights by miscalculating his good-time credits and time served. The district court consolidated the petitions. On September 6, 1995, the district court dismissed petition CIV 95-0397 as an abuse of writ. On August 1, 1996, the district court dismissed petition CIV 95-0034, finding that Paul had failed to demonstrate any prejudice resulting from the delays in his parole revocation hearings. Paul filed a timely notice of appeal, and the district court granted a certificate of appealability. We affirm.

## I. Petition CIV 95-0034

Paul is a New Mexico prisoner, serving time on sentences dating back to the early 1970's. On June 15, 1992, Paul was paroled for at least the third time, and placed under the supervision of Parole Officer Ronald Romero. In March 1993, Paul traveled to Texas to attend a Social Security hearing. He used a travel permit Officer Romero had earlier issued for that purpose. The permit authorized Paul to leave New Mexico on March 25, 1993, and return five days later on March 30, 1993. Shortly after Paul left for Texas, his former roommate, Ted Nance, called Officer Romero and told him that Paul had traveled to the hearing and would return when it was completed. Nance did not know Paul's address in Texas, but told Officer Romero that Paul's attorney in Texas was named Kara Stein. Kara Stein called Officer Romero shortly thereafter and

informed Officer Romero that Paul's hearing was scheduled for the end of March.  She contacted Officer Romero on subsequent occasions to tell him that Paul's hearing had been twice continued.  Officer Romero asked Ms. Stein to tell Paul to write or call him with his current address.

Paul wrote Officer Romero in April 1993, providing a Texas address, as well as the name and phone number of his physician.  According to Officer Romero, he sent Paul three monthly report forms to the address in Paul's letter, and instructed Paul to complete and return them.  Officer Romero never received any response.  He again contacted Kara Stein, who informed him that Paul's hearing had been continued yet again.  Officer Romero sent three more monthly report forms to Paul's Texas address, but received no response.

In August 1993, Kara Stein informed Officer Romero that Paul had prevailed in his Social Security case.  Officer Romero wrote Paul once again, asking him to convey his intentions now that his case was complete, but received no reply.  In October 1993, Officer Romero resigned, and wrote Paul yet another letter informing him that Steve Rausch was his new supervising parole officer, and asking Paul to contact Rausch.  Paul never contacted Officer Romero or Officer Rausch.  A warrant was issued for Paul's arrest on January 5, 1994.

Paul was arrested in Texas on March 14, 1994.  He was extradited to New Mexico on April 15, 1994.  His preliminary parole revocation hearing took place on June 10, 1994, 56 days after his return to the Western New Mexico Correctional Facility.  His final parole revocation hearing took place on July 26, 1994.  At his

hearings, Paul claimed that he had never received any letters or report forms from Officer Romero, and that he was unable to leave Texas because he had been attending physical therapy. The Parole Hearing Board revoked Paul's parole, finding that Paul had violated conditions of his parole by failing to report to his parole officer as instructed and by failing to consult with his parole officer before changing his residence. The Parole Hearing Board credited Paul with time served since the date of his arrest in Texas, but denied credit for the two months between the issuance of the warrant and his arrest.

On appeal, Paul renews his contention that the defendants violated his due process rights by failing to provide him with timely preliminary and final parole revocation hearings. In support of his argument, Paul cites two New Mexico statutory provisions:

> In those instances where the state has failed to conduct a preliminary parole revocation hearing on a parolee held for parole violations within sixty days of arrest, the parolee shall be eligible for bail. In all cases the final parole revocation hearing shall be scheduled for hearing within sixty days of the parolee's return to the penitentiary.

N.M. Stat. Ann. § 31-11-1.

> Upon arrest and detention, the board shall cause the prisoner to be promptly brought before it for a parole revocation hearing on the parole violation charged, under rules and regulations the board may adopt.

N.M. Stat. Ann. § 31-21-14. Paul also cites New Mexico Correctional Department Policy No. CD-052700: "A preliminary hearing will be conducted within 21 days of

-4-

his/her detention."[1] Paul notes that his preliminary hearing did not occur until nearly three months after his arrest in Texas, and 56 days after his return to Western New Mexico Correctional Facility. His final hearing was conducted 102 days after his return. He contends that these hearings occurred outside the statutory time periods, as well as outside the time periods required by Federal constitutional law.

The loss of liberty entailed in parole revocation requires that parolees be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Among other things, due process requires a preliminary revocation hearing "as promptly as convenient after arrest," and a final revocation hearing "within a reasonable time after the parolee is taken into custody." Morrissey, 408 U.S. at 485, 488. However, delay in providing these hearings does not, per se, constitute a violation of due process entitling an accused parole violator to immediate release. McNeal v. United States, 553 F.2d 66, 68 (10th Cir. 1977). Instead, "to establish a legal right to habeas relief, the delay, taking into consideration all the circumstances, must also be prejudicial." Id.; see also Harris v. Day, 649 F.2d 755, 761-62 (10th Cir. 1981). This is the well-established rule. See Meador v. Knowles, 990 F.2d 503, 506 (9th Cir. 1993) (due process violation occurs only when delay is both unreasonable and prejudicial); Villarreal v. United States Parole Comm'n, 985 F.2d 835, 837 (5th Cir. 1993) (154-day delay between arrest and final hearing did not violate due process absent a showing of prejudice); Heath v. United States Parole Comm'n, 788

_____

[1]Paul has not provided this court with any copy of the alleged Correctional Department Policy.

F.2d 85, 89 (2nd Cir. 1986) (predicating habeas relief upon showing of prejudice or bad faith); Sutherland v. McCall, 709 F.2d 730, 732 (D.C. Cir. 1983) (absent prejudice, proper remedy for delay is not habeas relief, but rather a writ of mandamus compelling compliance with statutory time periods); State v. Chavez, 694 P.2d 927, 930 (N.M. Ct. App. 1985) (showing of prejudice required); State v. Sanchez, 612 P.2d 1332, 1335 (N.M. Ct. App. 1980) (same).

The New Mexico statutes cited by Paul do not obviate the need for a showing of prejudice. While the specific time periods contained in N.M. Stat. Ann. §§ 31-11-1 and 31-21-14 bear upon whether the delay in this case was unreasonable, they do not entitle Paul to habeas relief absent prejudice. Villarreal, 985 F.2d at 837 (even though hearing was not held within the specific ninety-day period required by 18 U.S.C. § 4214(c), habeas relief still requires a showing of prejudice); Sutherland, 709 F.2d at 732 (same).

The district court found that Paul failed to demonstrate any prejudice by the nearly three-month delay between his arrest and preliminary hearing and the nearly four and one-half month delay between his arrest and final hearing.[2] We agree. Paul alleges that the delays prejudiced him in two ways. First, he asserts that in "making the determination [at the preliminary hearing] whether probable cause existed to support a finding that Paul violated his parole conditions, the hearing officer . . . relied on the testimony of Romero, whose recollection of events which occurred more than a year ago

---

[2]The record is silent as to the reasons for the delay. It appears, however, that at least one month of the delay is attributable to extradition proceedings.

was sketchy at best." Appellant's Br. at 14-15.[3] Paul, however, does not list a single specific example of sketchy memory, nor does he specifically challenge any of the chronology recounted by Officer Romero's recollection. Instead, he merely speculates that an earlier hearing would have resulted in a clearer "chronology of events." Id. at 16.

Second, Paul notes that although he had listed Ted Nance as a witness, Nance did not appear at the preliminary hearing. Paul states: "No explanation appears in the hearing officer's report as to why Mr. Nance did not appear; however, the delay may have been responsible for his absence." Id. at 15. Again, Paul merely speculates that delay caused Nance's non-appearance. Furthermore, Paul does not explain what, if any, testimony Nance would have provided that could have altered the final outcome.

In short, the delay in Paul's preliminary and final parole revocation hearings does not entitle him to habeas relief. During the delays, New Mexico statutory law may have entitled Paul to an order compelling a timely hearing or bail. Under the facts of this case, however, "the extreme remedy of release" is not available, Barton v. Malley, 626 F.2d 151, 159 (10th Cir. 1980), and we affirm the district court's dismissal of this claim.

---

[3]Although Paul refers to Romero's sketchy memory of events occurring "more than a year ago," the only memory loss relevant to his habeas claim would be that attributable to the delay between his arrest and the preliminary hearing. Thus, Paul essentially argues that Officer Romero suffered prejudicial memory loss within three months.

## II. Petition CIV 95-0397

Petition CIV 95-0397, which the district court dismissed as an abuse of the writ, concerns alleged errors in prison record keeping. Paul received three sentences in 1970 and 1971: (1) 1 to 5 years' imprisonment for burglary; (2) 10 to 50 years' imprisonment for armed robbery; and (3) 2 to 10 years' imprisonment for attempted armed robbery. In his opening brief on appeal, Paul contends:

> In addition to these sentences, the records of the Penitentiary of New Mexico have two additional sentences for "Robbery while armed with a deadly weapon and Burglary." Mr. Paul provided the district court with copies of a document referring to "Cause No. CR-566" as the Judgment or authority for this set of offenses, when, in fact, the document is a "Commitment" or mandate from the New Mexico Court of Appeals affirming the convictions and sentences entered in Bernalillo County No. 19906. "Cause CR-566" is not a separate judgment representing convictions of separate offenses. This error led to miscalculations in his time served and time remaining to be served, resulting in denial of Mr. Paul's good time credits and possible denial of actual time served.

Appellant's Br. at 6 (citations omitted). The government argues that these claims should have been raised in a prior habeas petition filed by Paul in 1992. Paul contends, however, that he "had no knowledge of these phantom sentences until his arrest for an alleged parole violation on March 14, 1994." Id.

Claims raised for the first time in a second or subsequent habeas petition may be dismissed as abusive unless the petitioner shows cause for the failure to raise the claim in an earlier habeas petition, and prejudice therefrom. Andrews v. Deland, 943 F.2d 1162, 1171 (10th Cir. 1991). The cause standard requires the petition to show that some objective and external factor impeded efforts to raise the claim in the previous habeas petition. McCleskey v. Zant, 499 U.S. 467, 497 (1991). Where a petitioner

-8-

claims that he lacked the factual basis necessary to raise the claim in a previous petition, we consider "whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process." Id. at 498.

As the district court correctly determined, Paul has failed to show either cause for his failure to raise this claim in his 1992 petition, or prejudice resulting therefrom. First, although Paul claims that he did not learn of the alleged errors until March 14, 1994, he does not explain why the prison records and information containing the errors were not available to him at the time he filed his previous petition in 1992.[4] As noted, Paul's sentences date back to the early 1970's. Since that time, he has had multiple contacts with the Parole Hearing Board, and presumably ample opportunity to familiarize himself with his sentence and record. Paul has failed to show that he could not, through reasonable means, discover the factual basis for his claims either before or during the pendency of his previous habeas petition.[5]

Second, with respect to prejudice, the parties agree that Paul's prison records have been corrected to remove any mistaken sentences derived from the New Mexico Court of Appeals mandate titled "Cause CR-566." See R. Vol. 1, Doc. 60 at ¶ 5;

---

[4]With respect to the erroneous sentences added as a result of "Cause CR-655," Paul does not claim that this error was *created* in March of 1993, but rather that he did not know about it until March of 1993.

[5]Paul's 1992 habeas petition was not dismissed by the district court until June 9, 1994. Paul claims that he learned of the alleged errors in prison record keeping on March 14, 1994.

Appellee's Br. at 13. Paul does not explain with any clarity how his good-time credit or time served has been, or is presently, affected by any previous error. Like the district court, we do not find any sufficient showing of prejudice.[6] Accordingly, we affirm the district court's dismissal of petition CIV 95-0397 as an abuse of the writ.

**III.**

For the foregoing reasons, we AFFIRM the orders of the district court dismissing Paul's consolidated habeas petitions. The mandate shall issue forthwith.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[6]In his reply brief on appeal, Paul alleges an entirely different error in prison record keeping. He claims that when his parole was revoked in March of 1993, his 2 to 10 year sentence for attempted armed robbery "was added back onto [his] existing sentences." Appellant's Reply Br. at 4. Hence, Paul claims that "he is currently serving a sentence that terminated in 1972, and for which no revocation proceedings appear to have been conducted." Id. This issue is waived by Paul's failure to raise it in his opening brief. Coleman v. B-G Maintenance Management of Colorado, Inc., 108 F.3d 1199, 1205 (10th Cir. 1997).